**WESTBROOK et al. v. HAGAMAN REFINING CORPORATION. (No. 1878.)**

(Court of Civil Appeals of Texas. El Paso. March 18, 1926.)

**Injunction** ⊚⟹35(1)—**Possession and use of pipe lines connected with refinery held to give owner of refinery sufficient interest to enjoin trespass by defendants who were without title.**

Where H. and others conveyed land on which was oil refinery, "with appurtenances," and grantee's trustee in bankruptcy reconveyed by like deed, but subsequently conveyed pipe line connected with refinery to defendants, plaintiff to whom H. and others conveyed the land, and who took possession of and used the pipe line, had sufficient interest therein to enjoin its removal by defendant, who had no title.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Action by the Hagaman Refining Corporation against J. V. Westbrook and another. Judgment for plaintiff, and defendants appeal. Affirmed.

W. D. Girand, of Abilene, and Grisham Bros., of Eastland, for appellants.

Levy & Evans, of Fort Worth, for appellee.

HIGGINS, J. This suit was brought by the Hagaman Refining Corporation against

J. V. Westbrook and J. L. Sullivan. The plaintiff alleged that it is engaged in the business of refining crude oil and selling the products so produced, and owned and operated a refining plant near the town of Tiffin, in Eastland county, Tex., which refinery consisted of the usual and customary equipment required in the operation of such plants, such as buildings, structures, machinery, pipes, pipe lines, etc.; that said refinery and the constituent parts thereof were so owned and in the possession of the plaintiff, and were then and there being utilized by plaintiff in such business; that among other parts composing said refinery used by plaintiff in the operation thereof and owned by plaintiff was what is commonly referred to as a three-inch pipe line, the same being composed of many joints of three-inch steel pipe fastened and connected so as to make one continuous line of pipe, which was used for transporting oil, gas, and other substances, and which said pipe line connected with and into the refinery of plaintiff, running thence through a part of Eastland county, Tex., to a point at or near the south property line of East Main street in the city of Ranger, Tex., a distance of approximately 2¾ miles. Plaintiff alleged it was the owner of each of said joints of said pipe line and of said pipe line, and it was entitled to the possession and use thereof. It was further alleged that defendants were threatening to dig up said pipe line and carry same away, and had already notified plaintiff that they would immediately begin digging same up, and plaintiff alleged that it would be irreparably damaged thereby, and that it would have no adequate remedy at law, etc., and that the threatened acts of the defendants would constitute an unlawful invasion by defendants of the legal rights of plaintiff, and would amount to a trespass upon the real property of plaintiff, and plaintiff prayed for a temporary writ of injunction restraining the defendants from digging up said pipe and pipe line or from in any wise molesting plaintiff in its use thereof, and prayed further that upon final hearing said temporary writ of injunction be made in all things permanent and perpetual.

A temporary writ of injunction was granted, issued, and served.

The defendants filed their answer and cross-action, denying the allegations of plaintiff, and alleged that they were the owners of the pipe line in question.

The case was tried before a jury, and at the close of the testimony the court peremptorily instructed the jury to find in favor of plaintiff, and upon such verdict judgment was rendered in favor of plaintiff.

The material facts are undisputed, and as follows:

M. H. Hagaman and others, doing business as a partnership under the name of Hagaman Refining Company, conveyed to the Ranger Refining & Pipeline Company, a corporation, a 50-acre tract of land, situated in Eastland county, Tex., together with the appurtenances thereunto belonging, and the deed reserved a vendor's lien to secure purchase-money notes amounting to $175,000. This is the land upon which the plaintiff's refinery is situate.

Subsequently the Ranger Refining & Pipeline Company was adjudged a bankrupt, and W. D. Girand, acting as trustee, was authorized and instructed to convey to M. H. Hagaman and others (being the same persons who formerly had conveyed to Ranger Refining & Pipeline Company) in satisfaction of an unpaid purchase-money note for $150,000 the said 50 acres of land, together with the appurtenances thereunto belonging. The trustee filed his report of the sale, praying for confirmation, and the sale was duly confirmed by the referee in bankruptcy. In pursuance of such orders and authority, the trustee in bankruptcy executed and delivered a conveyance, by the terms of which there was conveyed to M. H. Hagaman and others the said 50 acres of land, together with the appurtenances thereunto belonging. Subsequently M. H. Hagaman and others (grantees in the deed from the trustee in bankruptcy) conveyed the 50 acres of land, together with the appurtenances thereunto belonging, to the Hagaman Refining Corporation.

Subsequent to the conveyance of the 50-acre tract by the trustee to Hagaman and others the trustee sold and conveyed the pipe line in question to the Interstate Refineries, Inc., which in turn sold the same to Westbrook.

G. A. Clements, secretary and treasurer of Hagaman Refining Corporation, testified that an oil refinery had been located upon the 50-acre tract of land for a little over six years, which was being operated by the Hagaman Refining Corporation at the time of the trial. This witness further testified that there were a number of things used as a part of the refinery and connected with the refinery which was located on the land referred to, and consisting of crude oil stills, steam pumps, boilers, tanks, trucks, pipe lines, railroad tracks, etc. This witness further testified that the pipe line in controversy connected with the refinery, and extended thence to some wells, a distance of more than two miles, and there connected with pumps, and that oil was pumped directly from the wells into the refinery, and "it was absolutely necessary to use crude oil to operate the refinery." This witness further testified that the pipe line was used to convey crude oil to the refinery, and a part of the pipe line lay on the surface of the ground and some of it was buried in the earth; that when the sale was made to the Ranger Refining & Pipeline Company, the latter company went into possession of the pipe line. This witness further testified that, at the time said conveyance was made by the trustee in bankruptcy to M. H. Hagaman and

others, the refinery was there and the pipe line was there connected in the same way as it was when the property had been formerly conveyed to the Ranger Refining & Pipeline Company, and that, after the conveyance from the trustee in bankruptcy, the grantees took possession of the 50 acres of land and began using the pipe line, transporting natural gas through it; that they continued to use the pipe line and were so using it at the time of the trial; that a part of the pipe line runs across the 50 acres of land in question and has a physical connection with the refinery, where it is connected up to tank No. 10 on the premises, and the same has been connected all of the time; that, from the point where it leaves the property line on the 50 acres, it is one continuous, connected pipe line; that it was a continuous pipe line when sold to the Ranger Refining & Pipeline Company, and was a continuous pipe line when conveyed by the trustee in bankruptcy. "We are claiming this pipe line, because it is a part of the refinery."

M. H. Hagaman, president of Hagaman Refining Corporation, testified that the pipe line was connected into the refinery, and that when he and others conveyed the 50-acre tract of land to the Ranger Refining & Pipeline Company the latter company went into possession of the property; that the pipe line was one connected and continuous line, and that oil was conveyed throughout to the refinery. This witness further testified that the pipe line in controversy has the same physical connection with the refinery that it always had, and is connected with the tanks just the same as it was when originally sold to the Ranger Refining & Pipeline Company. This witness further testified that the pipe line was connected with the refinery and was used in connection with it for pumping oil into the refinery and pumping oil and gas out of the refinery, and that it has been so connected since soon after the refinery was built, and used as a part of the refinery ever since that time up to and including the date of the trial.

Appellants present a number of propositions, but they are all dependent upon the first, which is that the deed by the trustee to Hagaman and others did not pass the title to the pipe line, and Westbrook acquired such title through the trustee's deed to the Interstate Refineries, Inc.

In support of the judgment appellee submits three propositions, viz.:

(1) The deeds conveying the 50-acre tract of land, together with the appurtenances thereunto belonging, had the effect to convey and operated in law as conveyances of the pipe line in controversy as an appurtenance of the land and premises described in the deeds, and plaintiff thereby became the owner of such pipe line.

(2) If the deeds conveying the 50-acre tract of land, together with the appurtenances thereunto belonging, did not have the effect of conveying and did not operate in law as conveyances of the pipe line in controversy as an appurtenance of the land and premises described in the deeds, then M. H. Hagaman and others had never parted with title to the pipe line in question, and still owned the same, and as such owners were permitting its use by plaintiff herein.

(3) Appellee's possession and use of the pipe line was sufficient evidence of title in the absence of proof of any character of title held by appellants.

We regard as doubtful the correctness of the appellee's first proposition, but think the second and third sound. The deed from Hagaman and others to the Ranger Refining & Pipeline Company simply conveyed the 50-acre tract "together with the rights and appurtenances thereto." If that deed passed to the grantee title to the pipe line, then a like deed from the trustee in bankruptcy of such grantee passed the title to appellees. On the other hand, if those deeds were insufficient to pass such title, then the title remained in Hagaman and others.

It was undisputed in the evidence that appellee was in possession of the pipe line and was making use of it in its business. The witness G. A. Clements testified that the Hagaman Refining Corporation was in possession of this property described in these various instruments; that after the conveyance from the trustee in bankruptcy the Hagaman Refining Corporation took possession of the 50-acre tract of land and began to use the pipe line and continued to operate the same right along, and was actually using the same at the time of the trial.

The witness M. H. Hagaman testified that the pipe line had been actually connected with the refinery for a long time, and continuously used as a part of the refinery, and was being so used at the time of the trial, and that after the conveyance by the trustee in bankruptcy they took possession of the pipe line and had been in possession of it ever since, and that no one had disputed their right to the gas lines and water lines connected with the refinery until a day or so before this suit was filed.

Appellees' possessory right and use of the pipe line under Hagaman and others was sufficient for them to maintain this action against the trespass of appellants, who are without title.

Affirmed.